ROBERT L. BLAND, Judge.
The claim involved in this case arises out of an accident which occurred on the berm of state route no. 119, at Barnabus, in Logan county, West Virginia, on the night of June 22, 1943. Sometime prior to that date employees of the state road commission found it necessary to clean out a culvert on the berm of the highway just above the schoolhouse between the highway and the Chesapeake and Ohio railway at Barnabus which had become clogged or filled up. It had rained and the water from the culvert was over on the improved black top road. The highway at this point is of the standard width of eighteen feet. The head wall was removed and the culvert opened sufficiently to drain the accumulated water. Pending the replacement of the head wall of the culvert the rocks taken therefrom were used in building a protecting wall around it. This wall was intended to serve as a warning of danger to persons using the highway. The rocks were laid on three sides in triangular form, the embankment on the railroad, or left side of the berm, obviating the necessity of placing any part of the wall on that side. The weight of the evidence shows that between this pile or wall of rock around the culvert and *330 the edge of the black top highway there was a space of approximately two feet.
Before dark on that evening claimant, Dora Harmon, a midwife seventy years of age, went to the Soloman restaurant, where beer is sold, and where, she testified, she expected a man whom she identified as “Estepp” to call for her and accompany her to his home at Cinderella. While there, she further testified, one Tommy Williams, who resided at Hatfield Bottom, came to the restaurant and arranged with her to visit his wife, who was pregnant. She was also joined at the restaurant by P. B. Browning who, she said, was her first cousin. “Estepp” having failed to arrive at the restaurant by ten o’clock, claimant requested Browning to accompany her to the Williams home. They left the restaurant together when it closed for the day at ten o’clock p. m. and right above the storehouse crossed from one side to the other of the eighteen foot improved highway. Claimant walked on the left berm, while Browning remained on the black top surface. They engaged in conversation as they proceeded. Presently Browning perceived an automobile coming in the direction of Barnabu; and left the highway, stepping upon the berm behind claimant. Explaining this action of Browning, she testified: “The car was way up the road. There is a long stretch of road, you can see way up the road, and Mr. Browning said he saw a car coming, and he stepped, in behind me, off the hard road, stepped over to let the car pass.” After the automobile passed Browning returned to the improved highway. When they had then proceeded about twenty-five or thirty feet they reached the above mentioned pile of rocks or rock wall which had been placed around the culvert after the head wall had been removed and the culvert cleaned out, and claimant tripped and fell upon the rocks. She affirmed: “I didn’t see that pile of rocks and I just caught my foot under them and fell on top of the rocks and the rocks started sliding, I reckon. I went on right over in the culvert.”
An ambulance was called and claimant was taken to the Mercy hospital at Logan, where it was found that she had *331 sustained a fracture of the surgical neck of the femur and suffered bruises about the body. She was admitted to the hospital June 23, 1943 and remained there until July 12, 1943. Upon her admission to the hospital she was placed in a body cast — what is called a hip spica — of the left hip, and experienced a great deal of suffering. After returning to her home she was confined to her bed for about six weeks. Although there has been improvement in her condition it is made clear that she has some permanent disability and some limitation of motion in her left knee and left hip. She uses crutches when walking.
Claimant now seeks an award against the state for $15,000.00. Her claim is based upon the alleged liability of the state to pay her damages in that amount on the ground of the negligence of the state road commission, its agents or employees. She contends that in removing the rocks from the culvert employes of the road commission negligently placed such rocks upon and along the berm of the road and close to the paved portion thereof, and negligently failed to place any lights or other warnings near said rocks, and negligently failed to place any barriers or other safeguards around said rocks, and that by reason of such alleged negligence she sustained her said accident.
We do not think that the facts established by the evidence and relied upon by the claimant entitle her to an award in any amount.
A state of the union is not liable to suit in its own courts or the courts of another state, without its consent. 23 Am. and Eng. Ency. Law, page 83. A state is not liable for the torts of its officers or agents in the discharge of their official duties, unless it has voluntarily assumed such liability and consented to be so liable: 36 Cyc. 881. It is well settled that in the absence of a statute voluntarily assuming such liability the state is not hable in damages for the negligent acts of its officers while engaged in discharging ordinary official duties, pertaining to the administration of the government of the *332 state. Story on Agency, section 31. In the case of The City of Richmond v. Long’s Administrators, 17 Grattan 375, the Supreme Court of Virginia held:
“Public officers of the government, in the performance of their public functions, are not liable for the misconduct, negligence or omissions of their official subordinates.”
The state road commission is a department of the state government. It is held in Stewart v. State Road Commission, 117 W. Va. 352, 185 S. E. 567, that the constitutional immunity of the state from suit extends to its governmental agencies. And it may be said that under general law the state is not <o persons injured upon its public highways by reason of defects therein. No Statute has been enacted by the Legislature making the state so liable. However, in 26 Ruling Case Law 66, it is said:
“The power of the Legislature to make the state or one of its sub-divisions liable for injuries inflicted by it upon an individual is unquestioned even if there was no liability at common law.”
The court of claims act does not impose liability upon the state where no liability existed prior to its enactment. And since our state has not by general law assumed liability for the negligence of its officers and agents, the recommendations of the court of claims to the Legislature must of necessity depend upon the facts of each case presented for detrmination. An individual does not, in the absence of a statute assuming liability on the part of the state for such negligence, have a right or be entitled to an award for injuries sustained through the negligence of the state where such negligence actually exists. If the Legislature shall intend to make the state liable for the negligence of its officers and agents in all cases it will be necessary for it to so provide by future enactments. The present court of claims act is not susceptible of such interpretation.
*333 To make an award in this case, upon the facts disclosed by the record, would be equivalent to the bestowal of a charity, which we have no power to do. It would be a mere gratuity. The Legislature has no power to authorize and direct the application of the public money of the state to tire payment of gratuities. Cooley Const. Lim., page 155. It is generally understood to be the law that the Legislature is without power to levy taxes or make appropriations of public monies for a purely private purpose. “The Legislature is to make laws for the public good, and not for the benefit of individuals. It has control of the public monies, and should provide for disbursing them only for public purposes.” 1 Cooley Con. Lim., 184. A very enlightening West Virginia case dealing with this subject is that of Woodall v. Darst, Auditor, 71 W. Va. 350. In that case an appropriation made by the Legislature to an individual was held under the facts of the case to have been for a public purpose. The facts of that case and the facts of the case under consideration are easily distinguishable. In that case an appropriation was made by the Legislature for a member of the West Virginia National Guard injured while on duty going to state encampment at Parkersburg. It was held that a moral obligation rested upon the state to sustain the appropriation. In this case we fail to perceive that any moral obligation rests upon the Legislature to make an appropriation for the payment of the claim. To do so would involve the appropriation of the public money of the state for a purely private purpose.
That claimant met with an accident is unquestioned. Accidents frequently occur on the streets and highways. The mere happening of an accident would raise no presumption of negligence. That claimant suffered severe injuris on account of her accident is also unquestioned, but it does not follow under the circumstances of the case that she is entitled to an appropriation of the public money of the state to compensate her for her injuries and suffering. No legal or equitable right to an award is disclosed by the evidence. We have no power to make an award on purely sentimental grounds.
*334 Claimant testified that it was very dark on the night of the accident, yet neither she nor Browning carried a lantern or flashlight when 'they left the restaurant. Both professed knowledge of the absence of lighting facilities in the village. Browning testified: “Well, it was not real dark. I think probably the moon shined ten or eleven o’clock a little bit, probably a half-moon, as well as I remember. It wasn’t real dark nor it wasn’t light.” Although claimant testified, “There is a long stretch of road, you can see way up the road,” she chose to leave that part of the highway appropriated to public travel and go upon the berm of the road. Her companion, Browning, remained on the highway, only stepping off onto the berm when he saw the approaching automobile. Browning told claimant that the car was coming, but she denies that she saw it. It is strange that the noise and headlights of the automobile did not attract her attention. What was she doing and where was she looking when the car passed? She testified that she fell on the pile of rocks just as the automobile passed. Browning testified that they proceeded twenty-five or thirty feet after the car passed before they reached the culvert. Certainly the claimant was required to exercise ordinary care and prudence wherever she walked. There is no law that required the road commission to place a barrier at the point of the accident. Neither is there a statute requiring it to place lights on the berm and off of the travelled part of the road. The erection of a stone wall of the height of two feet at the point of the culvert should be sufficient warning of any danger that might have existed there. In the case of Rachel C. Lambert, Administratrix, v. State Roard Commission, 1 Ct. Claims (W. Va.) p. 186, we said:
“The road commission is not required to make the travelled part of the highway the whole width of the road as laid out. It has the power to determine how wide the road shall be extended and used for public travel. By placing the concrete on this road of the width of eighteen feet it fixed the limits of the road. It determined that part of the road appropriated to the use of automobiles, vehicles and public travel generally. The width of eighteen feet *335 of hard-surface road would seemingly be sufficient to accomodate public travel with convenience and safety.”
All of the evidence relating to the circumstances attending the accident is found in the testimony of claimant and that of her witness, Browning. There is conflict of statement m this testimony. Claimant asked the court to believe that she earned as much as $500.00 a year for her services as a midwife. That would mean, according to her testimony, fifty cases per annum. She testified that Tommy Williams engaged her to attend his wife, coming to the Soloman restaurant for that purpose. She was in the restaurant from before dark on a June evening until ten o’clock at night, the most of which time her witness, Browning, was there. He did not corroborate claimant’s testimony in relation to the alleged visit to the restaurant of Williams. Williams was introduced as a witness on behalf of the state. He testified that he had been acquainted with claimant all his life. When asked if he went to Barnabus on or around June' 22, 1943 and asked claimant to go out to see his wife, who was expecting a child, he answered: “I did not.” He said that he did not at. any time call claimant to go to his home to see his wife. On June 22, 1943 he was working on the night shift of the West Virginia Coal and Coke Company. He went to work at 6:39 o’clock in the evening and was working on the night of June twenty-second from that hour “up until about three in the morning.” He further testified that after the accident claimant “called me in once and asked me would I swear for her.” When asked what she wanted him to testify to, he replied: “That she was either coming to my house or going to my house or going from my house, I forget which.” He denied that he had been at the restaurant at any time on June 22, 1943. The evidence upon which claimant asks this court to make a recommendation to the Legislature on her behalf is unsatisfactory.
We are of the opinion that the claim does not possess substantial merit, and that an award would operate as an injustice to the taxpayers of the state.
*336 An award is, therefore, denied and the claim dismissed.